Council, you may proceed. Thank you, Your Honor. I may place the court Vanessa Martinez on behalf of Appellant Officer Donovan Sullen. This appeal... Council, before you start, I noticed that there's another attorney indicated. Are you going to share time? Yes, Your Honor. There's two appeals and we're going to split the 15 minutes. Equally? Yes, Your Honor. Okay. This appeal is brought based on the District Court's allegations alleged by the plaintiffs at the Ralph's Grocery Store, which is directly across the street from the Hermosa Beach Police Station. You're representing Officer Sullen? Yes. So you have the issue of standing to assert the claims he makes against Hernandez and Bogey? Hernandez and Baig. Okay. So my question is, isn't the standing issue resolved in our recent decision in Aang? I'm sorry, the name of that case? E.N.G. Your Honor, I'm not familiar with that case. I don't think that that case was briefed in the case. Well, it wasn't briefed, but it is controlling. I would think clearly, clearly says that the standing issue is not appropriately raised on an interlocutory appeal having to do with qualified immunity. Rather, it has to do with the ultimate recovery on the merits. Well, Your Honor, I think in this particular case, because of the facts that are alleged by plaintiffs, which we accept for the purposes of the qualified immunity application as true, and even in the standing issue, the facts are basically the same. Well, we just got through saying it isn't. And with the standing issue is wrapped up in the fact that it's wrapped up with the qualified immunity issue. I understand you may think that. But what I'm suggesting to you is that our recent opinion takes that out. And then on that issue, then I would submit, because I think that the outcome is the same, whether or not you do the standing analysis or you do the qualified immunity analysis. Okay. In this case, the plaintiff brought five specific facts against Officer Sullen, but the district court only analyzed and used two for its ruling. The two facts that the court found that Officer Sullen committed the, or at least for the purposes of the summary judgment, the First Amendment violations were, one, that he honked the horn sometime during the dispute at Plaintiff Keller, and, two, that there was call sheets evidencing that Officer Sullen went to the Barnes Grocery store parking lot on 11 occasions in response to customer calls. The issue with regard to the qualified immunity denial is that those two facts, even accepted as true, even accepting that Plaintiff Keller says that it was a negative honking of the horn, do not give rise to a First Amendment violation as to these 11 plaintiffs. There is virtually no evidence, or there is no evidence, that Officer Sullen was one of the officers who communicated restrictive instructions to these picketers, the kind of which they're complaining, for instance, telling the picketers you can't say shame on you. There's no officer that's named in this case that there's evidence that they gave that instruction. Another one of the injuries that the plaintiffs complained about is that some officer, some unknown officer, said you can't talk directly to the customers trying to enter the store. There is no deposition, there is no interrogatory, there's no competent evidence, as defined under 56C, and the cases of Johnson v. Jones that say this court accepts the facts that the district court accepted. And there's just no facts to support a First Amendment violation. What's interesting with regard to Officer Sullen's motion for summary judgment is what the district court did was cut and paste its analysis as to what the First Amendment or the constitutional violation was under the saucier analysis, the first prong. It virtually, if you look at the order, cut and pasted the analysis it had done for other officers and did not give any analysis as to the facts of Officer Sullen, except for on two pages, on page 5 and on page 12. And there the court says that because of Officer Sullen's predominant presence at the parking lot of the grocery store, he must have given those restrictive instructions to the picketers, not even to just plaintiffs, to some picketers. But the citation for that is only two facts, and those are the two facts that I've already enumerated for this court, honking of the horn on a single occasion and being present at the parking lot for the Bond's grocery store. In the answering brief on page 30, plaintiffs, appellees can see that presence is not enough to show a violation. And that's just the first prong of saucier. There is no violation as a result of any specific acts by Officer Sullen, and that's the analysis the district court should have done. It's interesting because when we did oral argument on this motion at the lower court level, this was brought to the court's attention, that if we were to go in front of a jury trial right now, you'd have no evidence to support that closing argument. And that is not sufficient to defeat a motion for summary judgment. Kagan. Let me ask you a question. Why is your argument about the limit, about his not having actually ordered any picketing restrictions, why isn't it sort of, isn't that a sufficiency, disguised sufficiency argument? Very simply because we do accept the facts that the district court accepted as true. We are not asking this court to re-weigh a single piece of evidence. The district court cited the two facts, and at this point we have no ability to dispute them. And those two facts are honking the horn and being there on occasions where he was dispatched to the parking lot as a result of customer complaints. All right. What evidence is there about what happened on the 11 occasions that he was actually physically present for? The only evidence that was provided to the court was the call sheets. And those call sheets did not evidence a single interaction with any of the main plaintiffs. Well, what about the videotapes? I watched some videotapes. I mean, doesn't it show some of the evidence that's at issue? I mean, wasn't that presented to the district court? The videotapes that this court has were from the Manhattan Beach motions for summary judgment. And, yes, the court did have that evidence before it. Those videotapes did not show Officer Sullen doing any of the acts for which they're now alleging First Amendment violations. Was Officer Sullen depicted in those videotapes? Officer Sullen is not depicted in those videotapes except for at the police station and the district court granted. But Officer Sullen, wasn't he the one who pushed Drake? No. No, that was heard. That's heard. Heard, okay. And the issue that we have right now, and I'm running out of time, the issue that we have right now is Officer Sullen at the grocery store. We actually separated the two issues, the First Amendment issues at the grocery store versus at the police station. At the police station, the court granted our motion for summary judgment on that matter. I don't have any time to reserve and I don't want to use up my co-counsel's time. Thank you very much. Thank you, counsel. We'll hear from co-counsel. May it please the Court. My name is Keith Dobbins, counsel for appellants who collectively I will refer to as the officer defendants. I would respectfully request one minute of my time be reserved for rebuttal. Just watch the clock. Thank you. Now, the decision of the lower court denying appellants motion for summary judgment brought on qualified immunity grounds should be reversed for, I'm going to say, two primary reasons because of the time. The first primary reason is the district court failed to apply applicable precedent, which required that the acts of appellants must have violated any constitutional rights. And second, and more importantly, the district court failed to apply binding precedent, which established that appellants' actions were not barred by clearly established law. Now, do you have a different argument with respect to Hahn and Drake? Correct. There is a different argument with Hahn and Drake as opposed to the First Amendment. With Mr. Hahn, the false arrest claim, we have the district court's ruling that Mr. Hahn was not disturbing the peace and, therefore, there was no cause for arrest. And the further analysis in terms of the reasonableness was a reasonable officer would have known that the arrest of Hahn violated his constitutional rights. And especially taken in light of the Supreme Court's recent ruling in Pearson, this second analysis was not as thorough as it was required to be, because you have to, as it was stated in Saussure, that the second inquiry, it has to be undertaken in light of the specific context and not as a broad general proposition. Well, your position is that Hahn disobeyed a direct police order, a lawful police order. That's correct. And if you don't if you And that's enough for probable cause to arrest. That is enough. And you take in conjunction the district court's ruling that the order to disperse was not unreasonable because the police station was not a public forum. Now, what about Drake? With Drake, you have it's an excessive force claim. And the problem here is that you don't have any clearly established law that shows that similar actions taken by other officers have been established that that is a violation of the Mr. Drake's constitutional rights. You have other cases and the burden is on respondent at that lower court to and now to bring forth the clearly established law that says here's the case that says or here are the line of cases that say Well, we have plenty of law that establishes what's excessive force and I guess from the videotape it appears that Mr. Drake was walking away from the police station when she was pushed. You have that defines excessive force when it does when it doesn't. The courts have stated that it's a it's a contextual inquiry. You have to look at the context. You have specifically on point Forrester versus city of San Diego, which is a Ninth Circuit case that says pain compliance techniques on non resisting protesters that resulted in bruises, a pinched nerve and a broken wrist was objectively reasonable. That's favoring us respond. She was she had gone to the police station to allegedly file a police report. They have been ordered to disperse and she was dispersed. She was leaving. You had she was ordered to disperse. You had Sergeant heard come and what she admitted was push her of a push that would be kind of like somebody helping somebody along. And then after that, another push that resulted in her falling down. Correct. Correct. As a matter of law that you can see that the videotape confirms that he pushed her. Yes, we can see it does. If you look at the videotape, the district court judge said also found that that the videotape showed Sergeant heard pushing, pushing Miss Drake down. But you have to take it in the context of what the officer, the officer's understanding at that time. We can't we can't sit here, look in 20, 20 hindsight and say that was excessive force. You had Sergeant heard being confronted with several picketers who wanted to come into the police organization to write a complaint. You had him saying this is too crowded. There's for any number of reasons is not safe. You need to disperse. He needed to call backup from three other cities to get police officers there to assist. Given that context, it was reasonable for him to believe that he needed to escort these people out to preserve any future semblance of peace and order. Even even though the district court said at that time that there everybody was compliant, everybody was peaceful. It was reasonable. Or should I say it was not unreasonable for the officer to believe that he needed to get these people out before anything else happened. And there's a deference that should be paid to the officers because they're forced to make these split second decisions. And there's actually if I if I can quote actually what it looks like from the videotape is that he lost his temper because the people were leaving. And if he lost his temper, I don't want to assume that fact because that was not a fact that that we don't know. It's just that if you watch it, they were peaceably leaving. At least she was. I don't know about Han that she was and she was pushed from behind twice by the officers. So needless. Well, it was you know, the courts have held that that a de minimis type of force is not sufficient to find excessive force. And with a shove in this regards, you have a police officer who is called and required to maintain order to protect and to serve. And it was a shove. It was not a you know, it wasn't a violent push. There's no allegation that any of that, you know, type of kind of devious behavior occurred. And I want to reserve some time. You may do so, counsel. You reserve your time. Thank you, Your Honor. I'll hear from the appellees, counsel. May it please the Court. Dan Stormer for the appellees. The entire argument that the Court has been presented with is essentially a sufficiency of evidence argument that has been rejected in virtually every case that has had the opportunity to address it. Is that just as to the First Amendment claims? Or are you talking about all of the claims? All of the claims, because their argument, I mean, the argument that we just heard from appellants is that the behavior, the evidence that is presented does not constitute a clearly the violation of a clearly established right. I would reject that because I think it's fairly clearly established that you're not entitled as a police officer to shove someone down as you're trying to get them out of a building. But the what they're saying What about Hahn? Hahn disobeyed a direct order. Well, Hahn, if you look at the it appears that the Court has viewed the videotape. And Hahn is the gentleman who's sitting at the end of the bench. And he's just sitting there and the officer walks up to him and says, you have to leave. And I would disagree with counsel's contention there. Judge Guilford did not say that the order to disperse outside was lawful. What he said was the order to disperse inside was lawful. In fact, found that it was an unlawful order outside. And that's what led to the wrongful arrest. So Hahn was sitting on the bench outside. He's sitting on the bench outside. He's sitting there. And if you watch the videotape, there is it's a split second. The officers walk up. He and he says in his deposition in the record that he asked them why they had to leave. And they arrested immediately. It is probably less than three or four seconds on the videotape at the most. And that's Hurd, Saylor and Lebeau who participated in that. So there isn't a single argument that they have presented to the court that is not based on their belief that there is a sufficiency of evidence problem. I don't think there's any issue as to whether there was a clearly established right. There's certainly, I mean, on the First Amendment issue, the right of picketing is well established. On the issue for Drake and the doorway, excessive force, and then for the wrongful arrest, those are all clearly established rights. Mr. Stormer, would you comment, please, on the evidence with respect to Sellon? Yes. I found it all kind of difficult to sort out because the district court's order was not terribly clear. And so counsel says that there are two pieces of actual evidence against him. That is the honking and the fact that he was present on a whole lot of occasions. And that there's nothing else to connect him individually to improper restrictions. I would comment first to say once again that is an argument on the evidence, which is the district. No, I understand that. Well, yes and no. I mean, if they accept it, and that's why I'm asking you. She says there are two pieces of evidence, period, one of them being the honking the horn, the other being that he was present physically on site 11 times. So then she says take that as given. It doesn't show any individual participation in any kind of improper First Amendment conduct. So I guess I've got two questions. I mean, the first question being is, is there other evidence? Yes. And then secondly, how do you add it up? Okay. The first is there were the 11 times where he's listed as responding to calls. Yeah. Which just shows he was there. Which shows he was there. Okay. The second time there were he said he would go up there, out there up to 10 times a day in a 12-hour shift. Third, there is the honking. And it wasn't just honking. It was honking and hollering at the people and acting, as described in the deposition, in a negative way towards the picketers. There is the battery upon one of the picketers, Mr. Naro. There is the evaluation of his behavior by the defendants themselves, in which they found that his behavior towards the picketers during the time was he had to develop his ability to be tactful when dealing with emotionally charged disputes. I mean, there's a recognition within that same time frame by his superiors that he acted improperly. And there's the videotape that shows him at the store itself. Where in the videotape does it show him personally doing anything? Well, I mean, that's probably an impossible question to answer. Well, there's actually kind of a theory. But you say he's actually in the video. Yes. But just very, very quickly, but he's there. That would be. I missed it. I'm sorry to say. I saw a lot of video of license plates and some disputes between picketers and customers. He's in, I believe, in the background of one of the, in one of the customer disputes. Well, there's no dispute he was there. There's no, I don't think there's any dispute that he's there. All right. Okay. But from our perspective, if you look at the Blankenship case, which says that when you're dealing with a deprivation of rights, those people who participate in the process, and the Blankenship case was the person who participated in the handcuffing and the punching, and there were a series of items that went into the case. But the officers who participated, even if they weren't the ultimate ones who put on what they're called hobble restraints, were found to be liable because they participated in the deprivation of rights. And in this case, there was a deprivation of rights, it's uncontested, every day. Every day they were told to get, that they had to go on the sidewalk. Every day they were told to shut up. Every day they were, they were required to not exercise their constitutional rights. If we have him there, we have these other behaviors. We have him as a participant and an active player in the denial of constitutional rights. We know that it happened on at least one occasion with Mr. Keller. Okay. So in a nutshell, in your view, why is, why do we lack jurisdiction over it? Because their argument is an argument that says they didn't show enough evidence. That's their argument. They're saying there's only two people, there's only two instances. We've shown more. Their argument is that the evidence was insufficient to show, to withstand a motion for summary judgment. That's absolutely a sufficiency of evidence argument. I mean, they might have argued the materiality. I mean, there are, there's one, one extension. I wouldn't call it necessarily an exception to the jurisdictional issue. But one extension which says if there's a challenge to the materiality of the, of the evidence, then that might allow this Court to have jurisdiction. But they didn't even do that. If you read both of the opening briefs, they are nothing but challenges to the sufficiency of the evidence. So I hope I've responded. I think that's really all I have. Roberts. Thank you, counsel. Thank you. Mr. Dobbins, you have some reserved time. If I may, if I can get 30 seconds to my question. Certainly. 30 seconds and I'll get back to you. Okay. Very well. Very briefly. As I said at the beginning, there were five pieces of evidence that the plaintiffs presented in opposing the motion for summary judgment. The district court only considered two, as is evidenced by the ruling on page 5 and page 12, did not consider the notation on the personnel record, did not consider the government tort claim settled for nuisance value by people who are not plaintiffs in this case, did not consider that. And under Jones v. Johnson, this Court need only consider the facts the district court accepted as true. That's about it for your time. And that's about it. Very well. Thank you, counsel. Mr. Dobbins. Thank you, Your Honors. Just real quickly also, you know, Respondent wants to, to keep plugging at the facts because he knows that this Court has no jurisdiction, if it is. But we'll concede all the facts. I mean, he can put it in the light most favorable to him, and there's still no clearly established law. And the district court's ruling kind of epitomizes that because they said First Amendment and the other two, for example, First Amendment, they said picketing is a well-established constitutional right, and thus no reasonable officer could conclude that suppressing picketing activity was lawful. That kind of analysis is in direct contravention of what Saussure said, that it must be undertaken in light of a specific context and not as a broad general proposition. And that is, that also goes to the false arrest with Hahn and excessive force with Drake, and with that I'll submit. Very well. Question. Do you agree that when Hahn was arrested, he was outside the police station? Hahn was outside. However, there is a motion for summary judgment that was granted on Respondent's right of assembly, and the district court said that the police station premises was not a public forum. The right of assembly was all the picketers outside the police station, and thus, that fell within Hahn. The police station premises is not a public forum. He was justified in not having them congregate there. And that justified his false arrest claim. Or that justified the arrest that was perpetrated on Hahn. Thank you, Your Honor. Thank you, counsel. The case just argued will be submitted for decision. And we will hear argument in Commodity Futures Trading Commission v. Bayer.
judges: O'scannlain, Rymer, Wardlaw